WALTHALL, Justice.
In this case appellee, J. M. Dunne, at times in the record referred to as Joe Dunne, sued the El Paso-Juarez Traction Company and the El Paso Electric Company, each a Texas corporation, for a commission upon the sale of their certain properties and business in Juarez, Mexico. Judgment was entered, without objection, in favor of the El Paso' Electric Company, and we will not refer to that company in considering any of the questions presented here, but will consider the issues presented as applying only between appellant, El Paso-Juarez Traction Company, and appellee.
Appellee, for a period of some twenty years next preceding and at the time of the matters involved here, was a real estate broker in El Paso, Tex., and he alleges that as such broker, on or about the 10th day of February, 1933, and on divers days thereafter, as such broker and agent, he performed certain services for appellant in the matter of the settlement of suits and claims then pending in Mexico, and found a purchaser for appellant’s Juarez plant, described in the evidence as the distribution lines and equipment of the appellant company in Juarez, Mexico, consisting of an organized plant for furnishing electricity and power in the city of Juarez, Mexico, and the suits and claims then pending described as two suits, one by appellant against the city of Juarez and one by the city of Juarez against appellant, the amount of the two aggregating something over $100,000, the claims of the two litigants about balanced, and were each settled in the transactions hereinafter stated; that appellee was the procuring cause and brought the parties, seller and purchaser, together, and that as a result of his efforts appellant did sell and deliver the said plant to the purchaser, a corporation organized under the laws of the Republic of Mexico, and known as Compania Mexicana Productora de Luz y Fuerza; that said sale has been consummated between appellant and said purchaser at $200,000, and said commissions earned by appellant, who was the procuring cause of said sale by appellant. The liability of appellant for commissions is based upon both express and implied contract.
On special issues the jury found;
1. On February 10, 1933, appellant employed appellee to effect the sale of the electrical equipment in Juarez to the Oia Mexi-cana Productora de Luz y Fuerza, S. A.
2. Subsequent to such employment, appel-lee was the procuring cause of the sale of. such equipment to the Oia Mexicana Produc-tora de Luz y Fuerza, S. A.
3. The reasonable value of appellee’s services in procuring such sale was found to he 5 per cent, of $175,000.
4. The usual and customary amount paid as a commission to brokers for effecting the sale of such property in question, on or about February 10, 1933, was $8,750.
5. Appellant employed appellee to effect a settlement of the indebtedness claimed to be due appellant by the city of Juarez.
*901 6. Appellee was the procuring cause of such settlement.
7. |3,500 was the reasonable value of the services of appellee in effecting such settlement.
On the jury’s findings as above, the trial court entered judgment in appellee’s favor and against appellant in the sum of $12,350, with interest thereon from the date of the judgment.
Prom the judgment as above, appellant duly prosecutes this appeal.
Opinion.
Appellant presents several propositions all directed to the insufficiency of the evidence to show either an express or an implied contract of employment by appellant of appellee in the matters referred to and submitted to the jury in the court’s charge.
The evidence is lengthy and comes to this court in form of question and answer, and in correspondence.
Without quoting the verbiage of the questions -and answers' to the witness, or the writing except where we think it necessary to do so, we will state the fact testified to.
Appellee, J. M. Dunne, testified: Had lived in El Paso about forty years and for the last thirty years had been engaged in the business of real estate and investments. Knows Mr. M. C. Smith, president of the appellant company ; had dealings with him; has known D. H. Tamez about twenty-five or thirty years; knows Jesus Quevedo. In 1933 Quevedo was mayor oí Juarez, and Tamez was secretary •and general manager of the Compañía Fuer-za Eléctrica of Juarez. Blr. Quevedo was president of the power company. On several occasions Mr. Tamez approached appellee in reference to the matters in controversy, in 1933, about the 5th or 6th of February. They were building their own (power) plant over there (Juarez) and he said they were going to eliminate the El Paso power. Mr. Tamez came to appellee’s office and said he had authority from his company to make the deal here in question. Mr. Tamez asked witness, appellee, to see appellant through Mr. Smith and see if he, Mr..Tamez, could have a conference with him. Witness saw Mr. Smith. There was some statement that Mr. Smith had had some conference with other parties and deferred meeting Mr. Tamez. Mr. Tamez wrote a note on February 8th to Mr. Smith, in which he said he wished to confirm the conversation that appellee had had with Mr. Smith on that day and had authorized him to take up the matter with Mr. Smith in regard to making a deal “for your equipment in Juarez,” and signed the name of his company, by him. Mr. Smith gave appellee and Mr. Tamez a meeting the next afternoon when appellee introduced Mr. Tamez to Mr. Smith and Bob Ilim-el, who Mr. Smith called into the conference. They stayed in Mr. Smith’s office about three hours. Mr. Tamez had a letter written in Spanish from Jesus Quevedo addressed to Mr. Smith; translated it read in substance that Mr. Tamez was authorized to treat with Mr. Smith’s company (appellant) in regard to the purchase of the lines which appellant had in service, that after the preliminary discussions with Mr. Tamez, the writer would personally continue the arrangements with respect thereto. The letters were given to Mr. Smith. Mr. Tamez also had the certificates of stock of his company which he showed to Mr. Smith to evidence the fact that he could malte the deal. Mr. Tamez wanted to get a price on appellant’s equipment in Juarez. Mr. Smith could not give the price as he had to segregate the different companies, but would do so on Monday or Tuesday, if Mr. Tamez meant business, and Mr. Tamez said they did. Mr. Tamez told Mr. Smith in the conversation, “In case we make the deal, they would also dismiss all litigation that was pending in Mexico.” They talked in a general way about the deal.
On Sunday following the above conference Mr. Tamez went to witness appellee’s house and gave appellee a piece of paper with names of people on it. Mr. Tamez said to appellee: “Tell Mr. Smith these people are up here with the Governor of Chihuahua, who is also owner in the new company, brother to the Mayor (of Juarez), the two Quevedo brothers and Tamez, Juan Soles Porras and Luis Esther Estrada are here and want to make the deal. Tell Mr. Smith not to pay any attention, I am ready to have a conference with him.” Appellee called at Mr. Smith’s office, and Mr. Smith not being in, appellee left a note addressed to Mr. Smith, stating, substantially, the following: Tamez claims these people are mudding the waters and he will advise you not to do any business with them. lie is the mayor and president of their company and now ready to do business. “Call me at S:30 and tell girl to call me and I will make date for us all.” The note is signed by appellee, giving his address. The note continuing, reads: “Tamez left this at my home last night. Protect me on commission in making your price to these people as they don’t pay my commission, seller does.” The note was not dated, but the evi *902 dence shows it about the ISth of February. Mr. Smith admits having received the note. Appellee reported to Tamez what he had done. Tamez asked appellee to make a conference engagement with Mr. Smith for them. Appellee had a telephone call from Mr. Smith ; he said to appellee: “I have got some ibad news. Jesus (Quevedo) came over and said he wanted to do business direct.” Ap-pellee replied: “What, bad news? Well, you got my letters and the notices.” The witness in his statement continuing, said: “Tamez sent me a letter notifying me to notify Mr. Smith that in case this deal was made they would have to pay the commission, not the buyer. 1-Ie addressed that letter to me and I took and gave it to Mr. Smith. So when Mr. Smith told me he had bad news, I says: ‘What bad news?’ He says: ‘This man Jesus came over and said he wanted to do business direct with us,’ I says: ‘If that is the case yon have all those letters. Are you still selling to the same people?’ He says: ‘Tes, if we sell at all it will be to the same people.’ I ways: T will look to you for my commission.’ He says: ‘If you got a commission you will have to work.’ I says: ‘That is my middle name, call on me and I will serve you.’ ”
Appellee kept in touch with the buyers until the deal was closed in September, 1933. He demanded of Mr. Smith the payment of his commission. Mr. Smith refused to make payment, and said to appellee: “I think you have done the work and got some commission ; I don’t think we owe it.”
The letter above referred to and briefly' stated in substance in appellee’s testimony was admitted in evidence and is as follows:
“February 24th, 1933.
“Mr. M. O. Smith, President, El Paso Electric R. R. Co., El Paso, Texas.
“My dear Mr. Smith: I understand you have been out of the City, and I am dropping these few lines to let you know that in case you ever make this deal with the Cia. Mexi-cana Productora de Luz y Fuerza, S. A., I will look to you to protect my interest as per the letters our Secretary, D. H. Tamez, and myself presented to you on February the 9th.
“Upon receiving your telephone conversation the other day stating that Mr. Quevedo, President of this company, had notified you that any business transaction with that Company was to be done personally by him, I notified Mr. Tamez at once and he asked me to hold this letter of notification up until his return from Los Lamentos, and he would be in my office hot later than February the 21st, but up to this writing he has not returned.
“I was in your office to see you, hut was informed that you was out of the City. I am sending a copy of this letter to the President of this company.
“Tours very truly,
“[Signed] Joe Dunne.”
The above is, in brief, all the material parts of the evidence we may consider in determining the sufficiency of the evidence in support of the jury’s findings. The only question presented, we think, arises under the first question presented in the court’s charge, namely, whether the evidence shows an implied contract or agreement on the part of appellant to pay appellee a commission for the part he took in consummating the deal. There is no question hut that appellee found a purchaser with which appellant consummated a sale of the plant and equipment and effected a disposition of its suits then pending in Mexico. The value of the commissions recovered by appellee is not questioned.
We think we need not enter into a discussion of the functions of a broker in order to determine his relation to the parties in this transaction. Appellee was not in charge of the property, he had no personal interest in the property involved, nor in the subject-matter of the suits. He had no terms of his own, or of either party, to offer, nor did he have or make any proposition of his own or of either party, or suggest a proposition of his own or of either party to effect a sale by the one party or a purchase by the other. He simply presented to the seller a purchaser ready, able, and willing to buy, and with whom the seller made the deal. The evidence, as we view it, shows appellee to be, in legal terminology, strictly a middleman, a go-between, an agent common to both. The evidence clea'rly shows that Mr. Smith, the representative of the appellant seller, accepted appellee and dealt with him, as the agent who had brought the purchaser to appellant. Mr. Smith was informed by appellee that a commission was to he paid appellee, and that the buyer was not to pay it. The evidence shows that Mr. Smith admitted to appellee that a commission was due him and' when pressed to protect appellee in his commission and to expressly agree to pay the commission, he said to appellee in reply that, “If you get a commission you will have to work,” to which appellee replied, “Call on me and I will serve you.” Considering the relation that appellee sustained to the parties, a go-between, we have concluded that under the evidence, the jury could very well conclude, under the charge of the court, from “the *903 words, and acts, according to the ordinary course of dealing and the common understanding of men,” there was a mutual intent to contract as to the commission.
The case is affirmed.